Madden, Judge,
concurring:
I agree with the decision that the plaintiffs are entitled to recover on both counts of their claim. I would, however, base that decision upon somewhat different grounds.
Under the terms of the contract, the contractor entrusted to the contracting officer, subject to an appeal to the head of the department, large powers of decision with reference to important matters. Under Article 16 of the contract, that official’s power was not, as is frequently the case, expressly limited to deciding disputes as to questions of fact. The words of the contract purported to give him the powers of decision of “all * * * disputes concerning questions arising under this contract * * *” with exceptions not material here. The Government urges that this court is foreclosed by this provision from all except a very narrow field of decision, i. e., whether the decisions of the contracting officer and the head of the department wrere “so grossly erroneous as to imply bad faith.” It urges that, whether the decisions of the officials be decisions of questions of fact or questions of law, the proper function of the court is equally limited, by a contract written as this one is written.
I think the first task of the court is the construction of Article 15 to ascertain what the parties meant by it. When a contractor with the Government signs a contract containing such language, he must recognize that he is entrusting to the agents of the other party powers of great potential harm to him. He is, perhaps, willing to do this in the case *168 of the Government when he would not be willing to so contract with a party other than the Government, for various reasons. One is that the Government is a large and desirable customer for contractors, and therefore he cannot afford to object to the terms which it, because of the large number of its contracts, has stereotyped into all of them. Another is that while the officers to whom the contract delegates powers of decision are agents of the Government, the other contracting party, they are also public officials who, as such, are presumably worthy of trust, and they have no financial interest in the questions which may arise under the contract which interest would cause them not to be impartial. But, after having suggested reasons why a contractor is willing to sign such a potentially disadvantageous contract at all, we still have for determination the question of how much he meant to sign away when he agreed to Article 15.
The Government concedes that Article 15. does not mean what it literally says, when it concedes that there is a narrow range of decision left to us. This means, I suppose, that the contractor did not intend to submit, without judicial review, to a decision of the officials named in the contract which decision a court, if it had jurisdiction to decide the question, would classify as “so grossly erroneous as to imply bad faith.” I think that the contractor did not intend to go even quite that far, though I recognize that the distinction which I suggest may be only a verbal one. If a court in which the contractor seeks relief can justify its taking hold of the case only by applying such strong language as “arbitrary,” “capricious,” “so grossly erroneous as to imply bad faith,” then the contractor has a nearly impossible burden if he seeks relief in court. Public officials who become heads of departments and contracting officers are only rarely guilty of conduct which merits such language of condemnation. Hence, unless courts merely use the strong language when in fact they mean something else, as, e. g., that they are unable to see any evidence of any substantial weight to sustain the official’s decision, the administrative determination under Article 15 is final in practically all cases.
I think that the contractor does not intend, when he agrees *169 to Article 15, to submit without judicial review to' a decision, when all the substantial evidence and all the relevant data normally considered in arriving! at such a decision are against the decision. I cannot imagine why any contractor would be willing to make such a bargain, or why the Government would want him to make it. It would follow that he had not made it, and had reserved a right to submit to a court the question of whether he had been subjected to such a decision.
This conclusion would recognize, of course, that not only the official who made the administrative decision, but also the reviewing court, are human beings, and that what seemed to the official to be evidence of substance may not seem so to the court, -and that the court may, in a particular case, be wrong and the administrative official right. These human variations cannot be escaped whether the review be of the weight of the evidence, or its existence. And when the administrative official, at first, and the court, at last, have decided upon the basis of what each can see, they have done all that can be done. Neither should be required to apply epithets to the other, as a condition precedent to jurisdiction.
The relation between judge and jury, the relation between quasi judicial fact finders and reviewing courts, have been, in this respect, what I think the relation is between this court and the officials named in Article 15 of Government contracts. I see no reason why that relation would not work out as well, in practice, in the latter case as in the former ones.
In applying what I have said above to the instant case, both as to the question of the temporary heating and that of the charges made by the City of Detroit for removing old water pipes, all the evidence and other relevant data which are of substance seem to me to go against the decisions of the administrative officials. I think it was assumed, without qualification, by both parties to the contract that the steam line of the Detroit Edison Company would be available for temporary heat, and that that assumption, being of importance in computing the amount of the plaintiffs’ bid, became a part of the contract. I think that, as to the water pipes, the Government was under a duty to *170 make the premises available for the plaintiffs’ work, and that the language of the contract imposing on the plaintiffs the duty to obtain licenses is not susceptible of application to these charges made by the city. For these reasons I think the court is right in deciding these questions on their merits, and giving the plaintiffs the relief which it has given.
Littleton, Judge, also concurs in the two foregoing concurring opinions.
Jones, Judge, took no part in the decision of this case.